IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN STEWART, TIMOTHY PHILLIPS, and GILBERTO COLON, individually, and on behalf of the class of all current and former residents of Harry Poe Manor at any time from January 2011 to date,<br><br>vs.<br><br>WAUKEGAN HOUSING AUTHORITY, a body politic and corporate; CHARLES CHAMBERS, individually and as Executive Director of WAUKEGAN HOUSING AUTHORITY; and RENWICK CORNELIOUS, individually and as Property Manager of Harry Poe Manor. | Case No.: 13-cv-08444 |

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
AND REQUEST FOR LEAVE TO AMEND

Now come Plaintiffs, John Stewart, Timothy Phillips, and Gilberto Colon, individually and on behalf of a class, yet to be certified, of certain residents of a bed bug infested multifamily public housing building, by their attorneys, Newton E. Finn, Anna Finn, and Amy Strege of Finn & Finn, Ltd.; Jed Stone of Stone & Associates, Ltd.; and Jeffrey Lipman of the Lipman Law Firm, P.C., and respond as follows to Defendants' (12)(b)(1) motion to dismiss.

INTRODUCTION AND SUMMARY

Defendants' Motion to Dismiss misunderstands the nature of Plaintiffs' federal claim. This federal claim is not based upon an express or implied right to public housing of a particular quality or to related issues of negligent maintenance. Defendants' breach of maintenance obligations impairing habitability, whether contractual (lease) or implied by law (warranty), along with other ordinary landlord/tenant issues, are addressed in Plaintiffs' pendent state law

1

claims. Plaintiffs' federal claim transcends such issues and sounds in substantive due process, alleging injuries to person and deprivations of property gratuitously caused and exacerbated by egregious governmental action: the reckless, fraudulent, and criminal renting of public housing to vulnerable people unable to adequately protect themselves.

While the *context* of Plaintiffs' federal claim is public housing, the fundamental rights under which they seek protection originate in the Fifth and Fourteenth Amendments to the Constitution of the United States. That Defendants' conduct was of a sufficiently reckless and egregious nature to support a Section 1983 action has been determined by the Honorable Richard Posner of the U.S. Court of Appeals of the Seventh Circuit.

ARGUMENT

The core of due process is protection from arbitrary and egregious governmental conduct, and the scope of that protection is not merely procedural but substantive. *Hurtado v. California*, 110 U.S. 516 (1884). Courts have used various standards to determine when governmental conduct becomes actionable as a violation of substantive due process; i.e., when it shocks the conscience, or when it intentionally or recklessly causes injury to person or property, or when there is deliberate indifference to causing such injuries. In a recent Seventh Circuit opinion, Judge Posner clarified and simplified some these standards in the course of evaluating a substantive due process claim, brought under Section 1983, by the estate and parents of a student who tragically drowned during a poorly supervised school field trip.

The facts of the drowning incident led Judge Posner to determine that the school officials had acted negligently, not recklessly, and that negligent governmental conduct was not sufficiently egregious to support a Section 1983 claim. *Slade v. Board of School Directors of the City of Milwaukee*, 702 F.3d. 1027 (7th Cir. 2012). In his opinion, Judge Posner asked a

rhetorical question about the various tests and standards that have been used to decide whether governmental conduct crosses the negligence line and becomes actionable under Section 1983: "Shouldn't it be enough to say that it violates the due process clause for a governmental employee acting within the scope of his employment to commit a reckless act that by gratuitously endangering a person results in an injury to that person? Are there not virtues in simplicity, even in law?" *Slade*, p. 1033.

Defendants' motion to dismiss and supporting memorandum entirely miss the point of Plaintiffs' federal claim in the present case, the point made above in Judge Posner's rhetorical question. Accordingly, Defendants focus their motion and memorandum on issues irrelevant to Plaintiffs' federal claim: whether there is a private right to enforce a criminal statute, whether there is a federal right to a certain quality of housing, whether the mere violation of a HUD housing regulation is sufficient to trigger Section 1983, etc. The gist of Plaintiffs' federal claim— indeed, its fatal thrust for Defendants— has nothing to do with such matters. Plaintiffs' federal claim goes in an entirely different legal direction, into the area of egregious conduct that gratuitously endangers and injures innocent persons, the kind of reckless conduct that was absent in *Slade* and is also absent in usual and customary landlord/tenant disputes.

In *Mathias v. Accor Economy Lodging*, 347 F.3d. 672 (7th Cir. 2003), perhaps the first federal action to address the subject of bed bugs, it was again Judge Posner who wrote a clear and powerful opinion based upon a set of underlying facts that mirrors those of the present case. While *Mathias* was a diversity case involving a Chicago hotel and out-of-state guests, Judge Posner's determinations as to the nature of the hotel's conduct, whether it was merely negligent or rather reckless and egregious, would apply to any Northern District case with similar facts, no

3

matter what the basis of federal jurisdiction. It is these determinations by Judge Posner, *inter alia*, which firmly ground Plaintiffs' federal claim under Section 1983.

In *Mathias*, the hotel knew that it had a bed bug infestation but failed to take effective action to eradicate it. This is precisely what Plaintiffs allege about Defendants' knowledge and failure in the present case with regard to the infestation in their multifamily building (Common Facts, paragraphs 17, 19, 26, 28). In *Mathias*, the hotel's intermittent use of pesticides chased the bed bugs from room to room, spreading the infestation and making it worse. This is precisely what Plaintiffs allege about the effects of Defendants' intermittent use of pesticides that spread the bed bugs from apartment to apartment (Common Facts, paragraphs 19, 20). In *Mathias*, the hotel rented rooms to guests without informing them of the bed bug infestation and instead attempted to conceal it. This is precisely what Plaintiffs allege about Defendants with regard to their renting of apartments to residents without disclosing the bed bug infestation, while also taking steps to keep the infestation hidden (Common Facts, paragraphs 5, 18.)

Given this set of underlying facts, common to *Mathias* and the present case, Judge Posner saw not merely negligence but recklessness and summarily affirmed a punitive damage award based upon willful and wanton conduct. Indeed, Judge Posner went further and determined that the hotel's actions "amounted to fraud and probably to battery as well." *Mathias*, p. 675. Observing that no criminal statues had been cited in *Mathias* to further characterize the egregiousness of the hotel's conduct, Judge Posner took it upon himself to quote a section of the Illinois Criminal Code— 720 ILCS 5/12-5(a)— which prohibited reckless conduct that endangered bodily safety. *Mathias*, p. 678. Following Judge Posner's lead, Plaintiffs cited in their complaint not only this same statue, but also two related sections of the Illinois Criminal

4

Code: 720 ILCS 5/12-5.1, which prohibits criminal housing management, and 720 ILCS 5/4-6, which equates reckless conduct to wanton conduct. (Count I, paragraphs 39, 41).

While the hotel's conduct in *Mathias* was clearly egregious, Defendants' conduct in the present case rises to an even higher level of egregiousness. In *Mathias*, the hotel's recklessness, fraud, and probable battery gratuitously endangered and injured a couple of guests who were exposed to bed bugs for a couple of nights. In the present case, Defendants' recklessness, fraud, and probable battery gratuitously endangered and injured hundreds of public housing residents— poor people, elderly people, and disabled people— who were exposed to bed bugs for several years and continue to be so exposed (Common Facts, paragraphs 17, 18, 28). Plaintiffs, in the present case, endured and continue to endure invasions of their bodily integrity and security and deprivations of their personal property, not to mention the loss of the quiet enjoyment of their homes, constructive eviction, impairment of the liberty of mobility, isolation from normal human contact, and the attendant shame, humiliation, fear, and anxiety (Common Facts, paragraphs 17, 20, 21, 22, 23).

Compounding the recklessness and egregiousness of Defendants' conduct is the fact *Mathias* was decided in 2003, when bed bugs had just begun their resurgence, and pesticides were the only known method to combat them. *Mathias*, p. 673. Defendants, on the other hand, when they learned of the infestation no later than January of 2011, had the benefit of nearly a decade of scientific research into the bed bug problem and numerous models of what worked, and did not work, to solve the problem. Defendants could thus claim no excuse of ignorance or uncertainty for the actions they took or did not take, since they had actual or constructive knowledge, in great volume and detail, about the best practices and most effective methods to eradicate bed bugs, including successful examples of eradication in multifamily housing.

As a matter of law, Defendants knew or should have known that bed bugs had become a nationwide risk endangering public health and safety, that pesticides were of limited use in eradicating them and could worsen an infestation by spreading the bed bugs around, that the eradication of bed bugs from multifamily housing required (short of building-wide evacuation and fumigation) the creation and implementation of an Integrated Pest Management Plan, that such a plan made it necessary to form an eradication team which included the building's residents, and that the formation of such a team would of necessity require the disclosure of the infestation to the residents and the education and training of them to assume their responsibilities under the Integrated Pest Management Plan (Common Facts, paragraphs 13, 14, 15, 16 a-h).

Likewise, Defendants had actual or constructive knowledge of additional steps required to eradicate a bed bug infestation in multifamily housing. Defendants knew or should have known that a series of nonchemical measures needed to be implemented to isolate bed bugs and prevent them from feeding and migrating, that both hot and cold temperature treatments were effective in killing bed bugs, that clothes washers and dryers dedicated to bed bug eradication should be provided to residents trained to properly use them, that mattresses throughout the building should be enclosed in bed bug-proof plastic covers, that beds should be placed in island positions with sticky substances applied to the legs, and that rules and policies had to be established and enforced to control the movement of property into and around the building and to prevent infested items, thrown into the trash disposal area, from being brought back into the building by other residents, a frequent occurrence in the present case (Common Facts, paragraph 16 j-k).

Yet despite this substantial volume of information and guidance about effective bed bug eradication procedures— information and guidance provided, *inter alia*, by a series of

governmental reports directed to or available to Defendants (Common Facts, paragraphs 13, 14, 15, 16, Group Exhibit C)— they performed little if any of the necessary and appropriate eradication procedures. Almost inconceivably, Defendants did exactly the opposite. First, they fraudulently concealed the infestation from the residents, new and old, thereby making it impossible to form a team with them to implement an Integrated Pest Management Plan. Then, for some two and a half years after knowledge of the severe infestation, Defendants relied solely or primarily upon the intermittent application of pesticides, making the infestation worse by spreading the bed bugs into other areas of the building (Common Facts, paragraphs 18, 19). Even after a written complaint by a resident and a letter from his counsel in the spring of 2013, Defendants largely persisted in their reckless and egregious actions (Common Facts, paragraphs 26, 27). At the time of the filing of Plaintiffs' Complaint in November of 2013, residents continued to be gratuitously endangered and injured by the bed bug infestation, which Defendants had deliberately hidden and heedlessly allowed to get out of control (Common Facts, paragraphs 26, 27, 28).

  Plaintiffs believe that their initial complaint pled sufficient facts to demonstrate reckless and egregious conduct on the part of Defendants that gratuitously caused endangerment and injury, not only in explicit violation of HUD regulations, Illinois criminal statutes, and a municipal building code, and also in implicit violation of Plaintiffs' constitutional rights of substantive due process under the Fifth and Fourteenth Amendments. Whether or not there is a federal statutory right to a particular quality of public housing, Plaintiffs have fundamental constitutional rights which protect both their bodies and their property from injury or damage caused by reckless and egregious governmental actions. When a governmental entity or agent gratuitously places persons in a position of threat and danger— when, as in the present case, a

7

local housing authority and its officers recklessly, fraudulently, and criminally rent and re-rent apartments in a bed bug infested building to vulnerable people who are poor or elderly or disabled— this is, to quote again the language of Judge Posner, "as if it had thrown (them) into a snake pit." *Bowers v. DeVito*, 686 F.2d. 616, 618 (7th Cir. 1982).

Nevertheless, despite the sufficiency of the facts that have been pled, Plaintiffs recognize that they should plead a constitutional claim explicitly, not merely implicitly. Wherefore, in response to Defendants' motion to dismiss, Plaintiffs, John Stewart, Timothy Phillips, and Gilbert Colon, individually and as representatives of the class of all persons recklessly exposed by Defendants to the same bed bug infestation since January of 2011, respectfully pray for leave of court to file a first amended complaint that cures the aforesaid defect. Plaintiffs further seek the opportunity to allege an additional violation of HUD regulations, deemed actionable under Section 1983, concerning the charging of excessive rent for public housing. *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418 (1987).

## CONCLUSION

Wherefore, Plaintiffs, John Stewart, Timothy Phillips, and Gilberto Colon, individually and on behalf of a class, yet to be certified, of certain residents of a bed bug infested multifamily public housing building, pray for leave of this Honorable Court to file a first amended complaint as above-described and also re-alleging Plaintiffs' pendent claims arising under Illinois law.

                                                Respectfully submitted,

                                                _____
                                                Newton E. Finn (0810118)
                                                Finn & Finn, Ltd.
                                                128 N. West Street
                                                Waukegan, IL 60085
                                                847/599-0202