15/3009

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GILBERTO COLON, CHANDRA THOMAS, TROY THOMPSON, CEDRIC REAMS, LANIQUA KUYKENDALL, CHARLOTTE A. DAVIS, ALICIA ROSS, CARYN E. PRICE, LATASHA GATLIN, individually and on behalf of the class of all persons who resided in Harry Poe Manor at any time from January 2011 to April 22, 2019, <br><br>      Plaintiffs, <br><br> vs. <br><br>WAUKEGAN HOUSING AUTHORITY, a body politic and corporate, <br><br>      Defendant. | Case No.: 13-cv-08444 <br><br> Hon. Judge John J. Tharp, Jr. |

**<u>DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

NOW COMES the Defendant, WAUKEGAN HOUSING AUTHORITY (hereinafter referred to as the "WHA"), by and through its attorneys, MICHAEL E. KUJAWA, ERIKA G. BALDONADO, JONATHON R. SOMMERFELD, and EMILY F. OTTESEN of SCHAIN, BANKS, KENNY & SCHWARTZ, LTD., and for its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a), states as follows:

### <u>INTRODUCTION</u>

After over a decade of litigation, Plaintiffs' sole remaining claim at trial is for breach of contract. (ECF No. 244, pp. 24-25). Plaintiffs allege the WHA breached its form lease entered into with each Plaintiff, requiring the WHA "to maintain the Premises and the development in a decent, safe, and sanitary condition, (and) to comply with the requirements of applicable building and housing codes and regulations of the U.S. Department of Housing and Urban Development

materially affecting health and safety[.]" (ECF No. 244, p. 24, ¶ 53). However, this evidence does not bear this out.

At trial, Plaintiffs have failed to adduce evidence in support of the *prima facie* elements of their breach of contract claims. Specifically, there is no evidence on the record that the WHA failed to substantially perform its requirements to maintain Poe Manor in a decent, safe and sanitary condition, or otherwise follow all applicable City of Waukegan and HUD codes and regulations. Additionally, the evidence shows that Plaintiffs themselves, other than Gilberto Colon, failed to substantially comply with their own obligations under the lease. Finally, Plaintiffs have not provided any meaningful testimony related to the value of their units in support of their damages claim. Moreover, Troy Thompson has failed to set forth any evidence on the record related to his own compliance and damages, and therefore this Court should enter a judgment against him and in favor of the WHA pursuant to Rule 50(a).

## **RELEVANT EVIDENCE PRESENTED AT TRIAL**

After presenting their case to the Jury on April 3, 2024, Plaintiffs rested. Thereafter, the WHA presented its case in chief, and rested on April 5, 2024. The WHA hereby references and incorporates all testimony and other evidence submitted to the Jury during both Parties' cases in chief as though fully set forth herein, although the corresponding trial transcripts and other documents are not attached hereto due to logistical limitations.

## **LEGAL STANDARD UNDER RULE 50(a)**

Federal Rule of Civil Procedure 50(a) states: "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or

defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. Pro. 50(a). F.R.C.P. 50(a) allows the district court to remove cases or issues from the jury's consideration when the facts are sufficiently clear that the law requires a particular result. *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000).

In determining whether to resolve an issue as a matter of law, the district court must consider all of the evidence, not just the evidence that is favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. Evidence supporting the moving party can be considered insofar as it uncontroverted, unimpeached, and from disinterested witnesses. *Id.* at 151. The applicable standard of review mirrors that of summary judgment, except that instead of considering the fruits of discovery, the court considers the evidence presented at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ARGUMENT

### I. Plaintiffs have failed to show that the WHA did not substantially perform its obligations under the lease.

A claim for a breach of contract requires the plaintiff to establish: (1) the existence of a contract; (2) its own performance of its conditions; (3) a breach by the WHA; and (4) damages resulting from the breach. *Performance Food Group Co., LLC v. ARBA Care Ctr. of Bloomington*, 2017 IL App (3d) 160348, ¶ 19. Here, the evidence at trial shows that the WHA consistently underwent exhaustive efforts to attempt to rid Poe Manor of bed bugs upon discovery.

Plaintiffs' own expert admitted at trial that there was no way to determine a "reasonable level of bed bug activity" through City building and safety codes, or through HUD regulations. (Transcript, Day Two at 116:2-14). Knowledge regarding bed bug levels would be determined

3

instead through hiring technical experts, such as pest control companies. (Transcript, Day Two at 115:15-19). He further stated that in the field experts do not guarantee eliminating bed bugs from a building. (Transcript, Day Two at 121:1-10). Furthermore, Dr. Potter and Orkin representatives, Lisa Haag and Mark Habbley agreed that when treating a building for bed bugs, issues with tenant compliance will always be a factor. Without it, there is a risk of reintroduction, ineffective treatments, and other obstacles standing between the WHA and bed bug eradication.

Regardless of the obstacles faced, the evidence at trial shows that the WHA immediately hired various pest control companies to help with the problem. The WHA worked with the pest control companies to come up with not just reactive responses to bed bugs in Poe Manor, but prophylactic, preventative measures to attempt to curb the spread of bed bugs. These measures included work done in partnership with pest control companies, specifically Orkin, such as sidewall treatments, building wide inspections (including canine inspections), and comprehensive tenant and staff education and training seminars. However, the measures did not stop there. Former Poe Manor Property Manager, Renwick Cornelious, testified that he would ask tenants moving in whether they had contact with bed bugs so he could try to line up inspection and treatments upon move in and prevent reintroduction of bed bugs into the building. He was adamant that, though the Waukegan Housing Authority cannot control what their tenants do which could contribute to or otherwise worsen the presence of bed bugs, once they were reported to him he would do everything in his power to fix it.

This testimony as further substantiated by Poe Manor resident and Resident Counsel President, Kittie Harden. Ms. Harden has lived at Poe Manor since 1990, and was directly involved with the tenant meetings and other education initiatives undertaken by the WHA to help curb the bed bug problem at Poe Manor. She testified regarding the lengths that the WHA went through to

4

help with bed bugs at Poe Manor. Her testimony is not contradicted by the testimony of the eight Plaintiffs who testified. Rather, the Plaintiffs argued that they either were unaware of the WHA's bed bug remediation efforts, or were aware but did not utilize them for various reasons.

The WHA has set forth significant evidence establishing its substantial compliance with all relevant lease terms. As Mr. Cornelious and the WHA's Executive Director Charles Chambers testified, they never failed a HUD inspection. They further stated that based on their hands on experience dealing with HUD and HUD regulations, the implementation of the integrated pest management plan that the WHA developed in consultation with pest control companies satisfied HUD's requirements to maintain the premises in a decent, safe and sanitary condition. Plaintiffs have produced no evidence to the contrary, and therefore this Court should find as a matter of law that the WHA did not breach its obligations under the lease.

> **II.      Plaintiffs Alicia Ross, Chandra Thomas, Caryn Price, Cedric Reams, Charlotte Davis, Latasha Gatlin, Laniqua Kuykendall, and Troy Thompson have failed to meet their burden of proof of showing they performed their own lease obligations.**

The evidence at trial has revealed that of the eight Plaintiffs who testified, all but one – Gilberto Colon – had received multiple and repeated 14-day notices of termination for failure to pay rent, and had various notes in the stipulated Orkin treatment records indicating their chronic failure to comply with Orkin's prep list. Furthermore, one Plaintiff, Latasha Gatlin, received an additional 14-day notice for poor housekeeping. Despite this, evidence shows that the WHA underwent efforts to treat each Plaintiff's unit for bed bugs, regardless of their failure to perform their tenant obligations.

As the WHA has previously argued, the aforementioned Plaintiffs each failed to show their own compliance with relevant terms of the lease. Plaintiffs' non-compliance includes, but is not limited to, failure to abide by and adhere to the extermination checklist of how to properly prepare

5

their units for bedbug inspections and/or treatments, failure to take steps to prevent the re-infestation and/or spread of bedbugs, despite being advised to do so as part of the WHA's education efforts, and their failure to comply with explicit terms of the lease, e.g. failure to keep their own units in a condition free of any sanitary, health, or safety hazards, failure to allow the WHA access to their units to perform inspections and pest control treatments, failing to notify the WHA upon observing bed bugs in their unit, and failing to pay their rent in a timely manner.

### III. Plaintiffs have failed to adduce any actual evidence to support their claimed damages.

As this Court held in its Order on the WHA's Motion *in limine* to bar subsidy damages, the proper calculation of damages in this case is the "difference in value" approach based on each Plaintiff's expected value of their unit if it was in a decent, safe, and sanitary condition. As the Illinois Appellate Court stated in *Housing Authority of East Saint Louis v. Melvin*, "since both sides [to a lease agreement] will ordinarily be intimately familiar with the conditions of the premises both before and after the breach, they are competent to give their opinion as to the diminution of value occasioned by the breach." 154 Ill. App. 3d 999, 1006 (Ill. App. Ct. 1987). The court continued on to hold that "in ascertaining damages, the finer of fact must weigh the severity of the violation and the duration of the conditions giving rise to the breach, as well as the effectiveness of steps taken by the landlord to abate those conditions." *Id.*

Here, Plaintiffs have each responded to one substantive question on direct examination related to their damages. For each Plaintiff, Plaintiffs' counsel has asked "do you have an opinion as to what the value of the leasehold interest was during the time frame your unit was infested with bed bugs." In response to this question, each Plaintiff has stated "$0." However, this is not enough information to adequately state a claim for damages. Plaintiffs offer no proof that they received no benefits under the lease, no evidence as to the duration of the conditions giving rise to breach, and

6

no real evidence as to the severity of the conditions. On the other hand, the WHA has offered an abundance of evidence related to the efforts it undertook to abate the bed bug issue, to the extent that no reasonable juror could find that the value of Plaintiffs' units was that significantly diminished. With no additional evidence on the record to state their claim for damages, Plaintiffs have once again failed to prove a material element of their claim.

### IV. Troy Thompson has failed to provide any testimony whatsoever in support of his claim.

Even if this Court does not rule in favor of the WHA on the above grounds, judgement as a matter of law should be entered against Troy Thompson, as he did not take the stand to testify regarding his own damages or performance under the lease, and therefore has not offered any evidence to support two *prima facie* elements of his claim. Though the issue of whether or not the WHA complied with its duties under the lease agreement remains, each individual Plaintiff is still required to prove their own compliance with the lease and their own damages. (ECF No. 274). Because Thompson has failed to take the stand to testify regarding these other elements, there exists no evidence on the record for the Jury to consider in support of Thompson's individual claim.

### CONCLUSION

WHEREFORE, the The WHA, WAUKEGAN HOUSING AUTHORITY, respectfully pray that this Honorable Court enter summary judgment in their favor and against Plaintiffs, inasmuch as there exists no material issues of fact to be determined with regard to the issues stated herein.

> Respectfully submitted,
> WAUKEGAN HOUSING AUTHORITY
>
> By: /s/ Emily F. Ottesen
>        One of Its Attorneys

Michael E. Kujawa, ARDC #6244621
Erika G. Baldonado, ARDC #6215371
Jonathon R. Sommerfeld, ARDC #6327628
Emily F. Ottesen, ARDC #6339477
Schain, Banks, Kenny & Schwartz, Ltd.
70 W. Madison Street, Suite 5400
Chicago, Illinois 60602
Phone: (312) 345-5700
Fax: (312) 345-5701
mkujawa@schainbanks.com
ebaldonado@schainbanks.com
jsommerfeld@schainbanks.com
eottesen@schainbanks.com